The court is now in session. You may be seated. Okay, now, Mr. Kushner, correct? Yes. Now, you're also the appellant. Yes. Okay, let me ... Now, Mr. Nikitas? I'm here, Your Honor. Thank you, Your Honor. And you filed the brief? I did. You're shown as the attorney of record. Your Honor, we're actually co-counsel on the case. I think we're both ... Our names are both on the briefs. All right, and there was a request to split the argument time, which was denied. Indeed, Your Honor. All right, so you're not proposing to do that, then?        Mr. Kushner. Mr. Kushner. Mr. Kushner. Mr. Kushner. Mr. Kushner. Mr. Kushner. Mr. Kushner. Mr. Kushner. Mr. Kushner. All right. All right then, you may proceed. Thank you. May it please the court, I'm going to focus at the beginning on the specific issue about whether Lieutenant Buda, one of the appellees, had arguable probable cause to arrest the appellant for the crime of trespass. And this is actually a simple issue of the district court accepting the facts that were favorable to the non-moving party on summary judgment and not crediting the facts that were most favorable to the plaintiff. Based on the facts that were presented by the plaintiff, no reasonable officer could have believed that the appellant had refused to leave. Based on the testimony of the appellant himself, which as the court notices me, a witness who was a retired FBI agent, another witness with a clear view who was a retired physician, and a third witness who was sitting right in front of the exchange, all provided testimony that the appellant, when asked to leave, simply questioned why he was being asked to leave. Then there was a discussion that ensued where someone who was in charge of the event came in and asked for the appellant's cell phone, demanded that he give up the cell phone, told the appellant he wouldn't have to leave if he gave up his cell phone, attempted to grab the cell phone from the appellant, the appellant puts the cell phone in his pocket and then stands up to leave. That's the appellant's testimony. The testimony of these three eyewitnesses who all had a clear view and could hear what was going on said that the appellant willingly stood up to leave on his own. There isn't any case law that could support that the appellant refused to leave under those circumstances. The closest case is a case where a person was asked to leave an area and just sat there for some extended period of time and didn't do anything. That's not what happened here. The appellant engaged the officer to find out why, and in the middle of that brief discussion, someone else gave the appellant an alternative where he wouldn't have to leave, and then once it was clear that that wasn't going to work, the appellant left. The district judge here relied on testimony that the police provided, claiming that the appellant argued with them and was somehow being disruptive, and also went, which was based on the testimony of the officers, not the testimony of witnesses favorable to the She heard the appellant on the video, which is something that was never authenticated by anyone in the proceedings, so the judge went and found her own facts. The problem is that there is actually evidence that the appellant has believed that the police officer's explanation about what happened is false. The jury could conclude that the officer was lying. The officer claimed that the appellant had a loud argument with another officer, and the other evidence in the record indicate that that never occurred, that there was never an exchange with that officer, so it was based on an explanation, but the officer's actions were based on an explanation of events that didn't even happen. The officer, Lieutenant Buda, also claimed that the appellant was yelling and screaming. There's evidence to contradict that. There's sound recordings that show the appellant talking in a very calm, soft, reasonable voice that was purposely designed to try and soothe and not inflame the situation, which was understandably a tense situation, and the witnesses testified that there was never any kind of yelling and screaming by the appellant. So there was a lot of evidence so that a jury can conclude that the appellee's version of events not only isn't correct, but it's false, and if they conclude that, based on case law we cited where that can be evidence of guilt if a jury concludes that the witnesses are lying. So the problem here is that the district court gave short shrift, wanted to get rid of the case apparently, and did not take the obligations seriously on summary judgment, which is to only accept the facts that are undisputed, and if they are disputed, then the appellant has a right to have a jury sort it out. There was another issue, it's the first time I've gone this far without getting any questions, so I'll move into the next issue here, which is retaliation. Now there are two stages of retaliation. One is the arrest itself, and the law in the 8th Circuit right now is that if there's probable cause for the arrest, then there's no First Amendment retaliation claim, and that issue is actually being reviewed right now in the Supreme Court in the case of Nieves v. Bartlett, which might be decided. Counsel, does that really affect our determination in this case? I mean, if that case comes down, and contrary to our case law, in future cases that may be relevant, but for the purposes of qualified immunity, isn't the question really what the And I think you've just conceded that the law was if there's probable cause, there's no retaliation. Is that correct? That's an interesting question, Judge, and I don't think that qualified immunity gets to a point where an officer can violate constitutional rights because they believe that there is probable cause for an arrest. I thought I heard you suggest that that is the case law in the circuit currently, and that would imply that it was the case law in 2015, I assume. I think that was the case law in 2015. Thank you. Now, there's also an aspect to the retaliation, and so of course we're arguing there was no probable cause, and so that defeats that, but there's also an aspect of retaliation that precedes the actual arrest, and that was the lieutenant asking the appellant to causation to this impermissible set of events, and so the evidence supports the conclusion that the lieutenant asked the appellant to leave because he was angry at the appellant for challenging his actions a minute before, where the lieutenant went and asked another person in the audience to leave. The appellant believed that there was no basis to ask this person to leave, was concerned that she was being racially profiled, and then that exchange is actually on recording, where the appellant very calmly challenged the officer that there wasn't any basis to ask her to leave. The officer backed off, but then threatened at some point that he was going to shut down the event and arrest everyone there, indicating that he was acting in a vengeful manner, and so based on that evidence, a reasonable jury could easily conclude that the lieutenant retaliated against the appellant depriving him of this opportunity to watch this interesting lecture because he exercised his First Amendment right to challenge the actions of the police officer. Now again, the district court here decides to credit facts that are favorable to the non-moving party when those facts are in dispute, where the claim on the part of the appellant was that he asked Kushner to leave because he was recording with his cell phone, and there was no place mentioned in the original police report by the lieutenant that that was his reason for asking the appellant to leave. Instead, he claimed that there was some kind of argument where the appellant was yelling and screaming at this other officer and arguing, and again, there's evidence to show that that didn't occur, and so that the lieutenant actually made up a pretextual reason for moving the appellant from the courtroom, and so it was erroneous for the district court to automatically credit what the police officers were saying when these facts were heavily in dispute, and if the jury believes the appellant and these three other eyewitnesses to the event, they would conclude that the conduct that the officer is alleging didn't happen, and it would be reasonable to conclude that this was pretextual, and that it was a pretextual reason to cover up for the unconstitutional reasons that the appellant was being asked to leave, and then that leads to a whole shift. If that hadn't happened, then none of the other ensuing events would happen, and so that the appellant still has a claim for retaliation, and the subsequent damages that ensued. Did I understand you to say that you believe that the district court viewed and considered a video that was not properly part of the summary judgment record? The court considered a video that was properly part of the summary judgment record, but the court made conclusions about the video, about the appellant, that she claims that she heard the appellant in the video having some kind of argument, and that was not something that was cited by any of the parties, and so she didn't have a basis to make that conclusion. The appellant was never asked about that in his deposition. There was never any affidavit testimony submitted that this was the appellant, so we're left here to take the judgment, the fact finding of the district court that she claims to have heard the appellant. There's no explanation of, there's no verification that it was the appellant's voice. There's also no explanation about the context of the event or the specifics of what was said. It wasn't transcribed, so the judge generally describes what she heard, and so this isn't something that the parties ever had a chance to brief or address because the judge raised this on her own, and so it is our position that it was inappropriate for the judge to engage in her own fact finding. If the judge didn't know the appellant, she never would have been able to identify the appellant's voice. She was actually taking advantage of the fact that she had known the appellant for a long time because the appellant happened to be a frequent litigant in the federal district court, but the appellant's voice wasn't identified by anyone else in the record, and so that was not, I think the judge overstepped her bounds. So earlier you made the comment that, with respect to the video, that there was a lack of authentication. You were talking about authentication of the voice. The voice and the actual exchange that occurred. But I guess the video is what it is, shows what it shows. Yeah, and she's talking, it doesn't show any of the players, and so I think that's an issue too. So the judge is making her own judgment that she thinks she hears appellant in that video, and again, first, is it really the appellant? We don't know. Second, is there, what's the context of that conversation? Again, we don't know. Thank you. Thank you. All right, Mr. Primus. You may proceed. Thank you. May it please the court, counsel. The defendants respectfully request that summary judgment be affirmed in all respects. Here, this case started out with a 14 count complaint and an effort throughout to, in some sense, attempt to muddy the record. Here, there is no genuine issue of any material fact that would preclude affirming summary judgment. The defendant's summary judgment motion had a statement of facts that was understated. It was based on what plaintiff conceded at his deposition or other testimony that wasn't contradicted. Likewise, the district court's summary judgment opinion relied on concessions that the plaintiff made when he had his deposition taken or other testimony that was uncontradicted. Counsel, how about this video that Judge Shepard was discussing with opposing counsel? Do you have a response to that? Did the district court improperly consider that evidence or improperly attribute or weigh the evidence in that video? The video was included with the declaration that authenticated the video. Appellant's counsel argued the summary judgment motion and the district court was familiar with his voice. I had assumed all along that it was an undisputed fact that the plaintiff was arguing throughout the afternoon with the law school officials and with the university police officer. In fact, his claim was he was being retaliated against because he was arguing with the officials that were present. I did not think there was any dispute about the fact that there was an argument just as to whether the university acted properly or the defendants acted properly in response to that argument. So, the district court didn't do anything improper. The video was properly authenticated and before the district court and I think as your honor mentioned the video shows what it shows and you can hear what you can hear on the video. So, there wasn't any mistake made by the district court as the video was reviewed. Here, although lots of facts get thrown against the wall and attempt to try to create an impression of a genuine dispute as to material fact, there are three reasons why summary judgment should be affirmed and having established those three points, however many of the 14 claims that are still on appeal should still be dismissed and summary judgment affirmed. First of all, it's undisputed that plaintiff repeatedly violated the rules of decorum that were posted and announced and that were in effect during this classroom lecture. Second, it's undisputed that the plaintiff was asked more than once to leave and he was warned that if he did not voluntarily leave, he would be arrested. That's undisputed. And finally, third, in the process of the arrest occurring, the plaintiff did not sustain any injury, certainly no injury that would support any sort of excessive force claim, whether pled as a section 1983 claim or as a state common law claim. With respect to the first issue that the plaintiff repeatedly violated the rules of decorum posted on a freestanding sign in front of the entrance to classroom 25 affixed to the wall on the door to enter classroom 25 made it clear that no recording at all, video or audio, was permitted in there. Those rules of decorum were referenced at the very start of the presentation by a law school professor. There was no, and still isn't, in this circuit at least, any clearly established First Amendment right to use a video recording within that classroom lecture. It's a content neutral, viewpoint neutral rule put in place that applies here today in the courtroom and it's a rule of decorum premised on the Minnesota Supreme Court's courtroom rules of decorum. It's a common restriction at any event where a CLE credit certainly is offered in other events as well. It's undisputed that Ms. Lokensgaard, not a university police officer but the law school's director of facilities, more than one time had to ask the plaintiff to stop recording. In fact, it's undisputed that the plaintiff took six separate recordings that afternoon. Now, there's some dispute about how many times Ms. Lokensgaard had to tell the plaintiff to stop recording, but it's undisputed it was more than one. Likewise, the plaintiff complains that perhaps there was someone else in the crowd who was recording who Ms. Lokensgaard didn't ask to stop recording. Ms. Lokensgaard testified that it was a well-attended event and as she saw people, she asked them to stop recording. So maybe it's possible she didn't see someone that the plaintiff claims he saw recording, but the university attempted to evenly apply this content and viewpoint neutral rule. Secondly, after repeatedly violating the university's rules of decorum, the law school's rules of decorum, the plaintiff was asked more than one time that he needed to leave and he was arrested. Again, that's undisputed. There may be a dispute about how many times he was warned, but it's undisputed it was more than one and it's undisputed he was warned that if he didn't leave, he would be arrested. Under Minnesota law, and he was arrested for trespass, so we're looking at Minnesota trespass law, as this court recognized in the Peterson v. Kopp K-O-P-P case, a 2014 8th Circuit case applying Minnesota law and citing Minnesota Supreme Court precedent, a refusal to leave does not need to be protracted. It does not even need to be verbal. That's Minnesota law. So in 2015, did the officer have arguable probable cause that the plaintiff committed trespass when he was asked to leave more than once, warned that he was about to be arrested and didn't leave? And again, it's not if we were in front of a jury, could we prove trespass beyond a reasonable doubt. It's whether the officer had probable cause, arguable probable cause, to believe that trespass had occurred. Now what is that line? At what point does a person's refusal to leave become trespass? Is the plaintiff suggesting that the officer should have waited another 10 seconds, another 30 seconds, another minute? That sort of line drawing would be inconsistent with the idea of why there's qualified immunity, that the police officers get the benefit of the doubt in these sorts of cases. Now here the plaintiff continues to insist that he stood up and then he was arrested, but as pointed out in the district court in an oral argument before the district court, in his deposition on page 104, he said he was about to stand up. Now you can, for the purposes of summary judgment, grant that the plaintiff perhaps was about to stand up, but still affirm summary judgment because there's no way for the police officers to read his mind that he was about to stand up. And so therefore, that attempt to try to manufacture a fact dispute is unavailing. Here as pointed out, because there was arguable probable cause, there can't be a retaliation claim. Now this dispute about whether the plaintiff was yelling or whether his voice was merely elevated is not a material dispute with respect to trespass. The volume of his voice was irrelevant to the trespass arrest, so that's not an issue that concerns whether there was arguable probable cause. So the plaintiff had to be escorted out of the room after he was placed under arrest, and the plaintiff concedes he suffered no injury. It's the law in this circuit, and certainly was the law in 2015, that not every push or shove that was unnecessary supports a cause of action, and we're certainly not conceding there was any push or shove. Instead, there's some temporary redness that lasted less than a day that was on one of the risks and complaints of tightness. For a handcuff case, you need more than that. It's undisputed that the plaintiff was asked when he was booked whether he suffered any injury. He said no. Did he need any medical attention? No. So there was a de minimis use of force, and the de minimis use of force without any injury supports the claim that as a matter of law, there was no excessive force. The other cases plaintiffs cited involved much more stringent and significant injuries. With respect, and so I've made the three points, so maybe I should have said a fourth point. There's the fourth point that some claim of substantive due process or defamation based on some representation to a prosecutor somehow plays a role in this case, but the district court efficiently and correctly dismissed those claims or entered summary judgment. The police officers never claimed that the plaintiff deliberately kicked an officer. In fact, one of the police officers explained to the prosecutor that it was an accident. There was no intent to kick an officer. So the police officers, inconsistent with any theory of malicious prosecution, are the ones volunteering information that's to the benefit of the plaintiff. Likewise, to the extent of defamation or a substantive due process claim is based on whether the volume of someone's voice is sufficient to be considered yelling is an inherently subjective judgment. One officer said, well, she thought his voice was elevated. Another officer, the judgment was that it was yelling. In a tent situation, chaotic environment, more than 100 people where the officers are greatly outnumbered by the number of people who are trying to disrupt and prevent a guest speaker from making his presentation, that's a subjective judgment call and not sufficient to base any claim of malicious prosecution, particularly where the city prosecutor made an independent assessment as to whether there was probable cause. Finally, this case is very important to the university and would be important to any institution of higher education. It's important that guest speakers be allowed to deliver their presentations, even if some people might choose to not want to listen to what the speaker has to say. Particularly in a college setting where you hope students get to meet people different from themselves, get to hear and consider alternative viewpoints, the university implemented the rules of decorum to try to make sure that this exchange of ideas occurs. You don't have to go to the speech if you don't want to listen to the speaker, but if you do, whether you agree or disagree, you leave an event better informed about the speaker's point of view. And that's why the university tried to enforce its rules of decorum to make sure that the event occurred. The plaintiff was video recording in contravention to those rules, repeatedly had to be asked to stop recording. Ultimately, he was asked to leave. He didn't leave, so he was placed under arrest for trespass. And those undisputed facts established the basis for summary judgment, and the defendants respectfully request that summary judgment be affirmed. Thank you. Thank you very much. How much time does Mr. Kushner have remaining? Two minutes, one second, Your Honor. Thank you. I will not be able to clear up all the red herrings and misstatements of the record in two minutes, but let me work on it. So the yelling and screaming, Lieutenant Budu played a video clip of one of the instances where he claimed that the appellant was yelling and screaming, and he conceded that there was no screaming. It's not just subjective. There's some point where it's clear that it can be clear that someone is not screaming, and the point is that there's video evidence of the appellant's voice that makes it clear that he wasn't screaming in instances where the officers claimed that he was screaming. So that is a fact that can be proven false. And, you know, there's no dispute that the university should be able to have different speakers and they should be able to maintain order in their lecture halls, but the point here is that the appellant was acting within his rights and got arrested because of it for no reason, and then violently thrown over a brick ledge, and that's on the video. It's not a de minimis use of force. Fortunately, there was no injury, but it certainly was a scary incident that was very violent when it happened. So the issue about the video recording, it's somewhat of a red herring except the question about whether there's a clearly established right to do that, but the video recording here wasn't of the lecture. It was the police officers' interactions with the people who they were escorting out, where there was intrusions, and so there was a lot of case law that shows a First Amendment right to video record police officers, and that's the right that appellant was asserting in this case. And the reason it's a red herring for purposes of the arrest and retaliation is because when he did, and there's a clip where this Linda Loken's guard is asking the appellant to turn off the cell phone, the appellant claims, the appellant explains that he's not recording the lecture, he's just recording what's the interactions, but then he goes and turns the cell phone off once he's told to do so, turns it over, and so there wasn't any, that's not a crime, there's no claim that it's a criminal offense to video record, and that's not what the appellant was arrested for. He was arrested for challenging the officer completely within his constitutional rights. Thank you. All right. Thank you very much. All right, counsel, thank you for your arguments. The case is submitted. You may stand aside.